UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RANCE POINTEC,<br><br>         Plaintiff,<br><br> v.<br><br>J. GEOGHEGAN, C. THAMERT, DR. FETROE,<br><br>         Defendants. | No. C12-5578 BHS/KLS<br><br>**REPORT AND RECOMMENDATION**<br>Noted for:  June 21, 2013 |

  Before the Court is the motion for summary judgment of Defendants Julie Geoghegan, Carol Thamert, and Dale Fetroe.  ECF No. 26.  On May 2, 2013, Defendants served Plaintiff with a *Pro Se* Prisoner Dispositive Motion Notice consistent with *Woods v. Carey,* 684 F.3d 934, 940-41 (9th Cir, 2912).  ECF No. 28.  Plaintiff Rance Pointec filed no papers in opposition to the motion.  His failure to do so may be considered by the Court as an admission that the Defendants' motion has merit.  Local Rules W.D.Wash 7(b)(2).

  Having carefully considered the motion, evidence, and balance of the record, the Court recommends that Defendants' motion for summary judgment be granted because Plaintiff has failed to show that his constitutional rights have been violated.

**SUMMARY OF CLAIMS**

  At the time of the events described in his unsworn Amended Complaint, Mr. Pointec was confined at the Coyote Ridge Corrections Center (CRCC).  He alleges that on August 11, 2011, Defendant Geoghegan misdiagnosed his thumb as a torn ligament and offered no treatment other than to recommend that he put ice on his thumb.  When he returned to CRCC medical on

REPORT AND RECOMMENDATION - 1

September 29, 2011, Defendant Thamert told him that his "thumb was definitely not broken and to continue to ice it for the swelling," but she failed to re-examine his x-ray or offer any treatment for his pain. *Id.*, p. 3. On October 11, 2011, Defendant Fetroe examined his thumb and x-rays and concluded that Mr. Pointec's "thumb was definitely broken and had healed wrong." *Id.*, p. 4. According to Mr. Pointec, Defendant Fetroe told him there was nothing he could do, refused to suggest other alternatives, and was not concerned that Mr. Pointec was in pain. *Id.* Mr. Pointec alleges that he suffers permanent disfigurement and disability causing him "emotional injuries and damages." He seeks declaratory relief and compensatory and punitive damages. *Id.*, p. 5.

## STATEMENT OF FACTS

Elizabeth Suiter, M.D., CRCC's Medical Director, previously reviewed Mr. Pointec's medical records in order to provide a response to Mr. Pointec's state tort claim relating to his left thumb injury. According to his medical records, Mr. Pointec was seen in CRCC medical on August 11, 2011. According to Mr. Pointec, a baseball hit his thumb two weeks earlier and after he iced it, it felt better so he cancelled his sick call. But, he filed another sick call request because his hand was still really sore and hard to move. ECF No. 26-1, Declaration of Elizabeth Suiter, M.D., ¶¶ 3-5.

Defendant Carol Thamert, an Advanced Registered Nurse Practitioner, examined Mr. Pointec on August 11, 2011 and found that Mr. Pointec's left thumb was swollen and possibly fractured. Defendant Thamert ordered an x-ray. Defendant Julie Geoghegan, an x-ray technician, conducted the x-ray the same day and mailed the x-ray to be read by a Radiologist. The Radiologist report noted a suspected fracture (chip) involving the base of the thumb. Dr. Suiter states that because Mr. Pointec was already two weeks out from his injury and given the

REPORT AND RECOMMENDATION - 2

small size of the fracture, it was not clear whether he would benefit from the typical treatment of splinting and stabilization, so he was told to rest his thumb. *Id.*, ¶ 5, Attachment A.  The August 11, 2011 primary encounter report of Defendant Thamert indicates that a splint was not needed. *Id.*

Julie Gurr (Geoghegan) is an Imaging Technologist at CRCC.  On August 11, 2011, she performed a three-view x-ray of Mr. Pointec's left thumb and placed the x-ray in the mail for the Radiologist's review.  ECF No. 26-3, Exhibit 3, Declaration of Julie Gurr (Geoghegan), §§ 2, 6.  According to Ms. Gurr, imaging technologists are not considered medical providers and they do not have the authority to prescribe medication, diagnose injuries, or offer medical advice or treatment options.  Those decisions are left to the medical providers which include physicians, advanced registered nurse practitioners, and physician's assistants.  *Id.*, § 7.   Ms. Gurr did not provide any prognosis, medical advice, treatment options, or make any determinations regarding Mr. Pointec's medical care and she did not make any notations in Mr. Pointec's medical chart. *Id.*, § 8.

On September 29, 2011, Physician Assitant (PA) Relvea examined Mr. Pointec and reviewed the Radiologist report of the August 11, 2011 x-ray.  PA Relvea's plan included scheduling Mr. Pointec for a follow up appointment in 1 to 2 weeks to reassess Mr. Pointec's range of motion and strength.  On October 10, 2011, Mr. Pointec cancelled his scheduled appointment.  ECF No. 26-1, Suiter Decl., Attachment B.

On October 11, 2011, Defendant Dale Fetroe, M.D. examined Mr. Pointec and noted a decrease of range of motion (flexion) of his left thumb and swelling of the IP joint.  Dr. Fetroe reviewed the August 11, 2011 x-ray results and told Mr. Pointec that he had a chip with an interruption of the Ffexion tendon.  Dr. Fetroe advised Mr. Pointec that he would continue to

REPORT AND RECOMMENDATION - 3

have full extension strength, but that his flexion strength was diminished.  Defendant Fetroe also informed Mr. Pointec that casting and/or splinting would not be effective.  Defendant Fetroe suggested that they wait to see if some flexion strength could return back on its own.  ECF No. 26, Exhibit 1, Attachment C; Exhibit 2, Declaration of Dale Fetroe, § 4.  On October 19, 2011, Mr. Pointec cancelled his follow up appointment and shortly thereafter, he was transferred from CRCC.  *Id.*, § 5.

On or about November 3, 2011, Mr. Pointec was transferred to the Washington State Penitentiary (WSP).  On December 15, 2011, he was seen in WSP medical by Kenneth Moore, PAC.  Mr. Pointec complained of a decrease in his range of motion and pain with movement of his left thumb.  Mr. Moore ordered an x-ray, which was conducted on December 21, 2011, and then compared those x-ray results to the x-ray taken on August 11, 2011.  ECF No. 26-12, Attachment D.  According to Dr. Suiter, the December 21, 2011 x-ray showed no fractures and that the previously seen irregularity had healed.  In addition, the x-ray showed that Mr. Pointec's joint spaces were well preserved and his soft tissue appeared normal.  ECF No. 26-1, Exhibit 1, Suiter Decl., § 8, Attachment D.

 Mr. Pointec failed to appear for his follow up appointment on December 29, 2011. ECF No. 26-1, Exhibit 1, Suiter Decl., § 9.  On January 30, 2012, Mr. Pointec was seen by Mr. Moore for his left thumb and an additional medical complaint, which is not at issue in this lawsuit.  Mr. Moore prescribed treatment for the additional medical complaint but did not prescribe any further treatment for Mr. Pointec's left thumb.  ECF No. 26-1, Exhibit 1, Suiter Decl., § 9, Attachment E.

Dr. Suiter believes that Mr. Pointec's ongoing symptoms appear to be related to the ligamentous damage at the initial injury.  With ongoing therapy, to include range of motion

REPORT AND RECOMMENDATION - 4

exercises, he is likely to continue to regain function of his left thumb. In her professional opinion, no additional treatment of Mr. Pointec's left thumb is required. ECF No. 26-1, Exhibit 1, Suiter Decl., § 10.

## STANDARD OF REVIEW

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen*

REPORT AND RECOMMENDATION - 5

*v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

## DISCUSSION

**A.  Eighth Amendment – Denial of Medical Care**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)); *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir.1988). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978). To hold a defendant liable for damages, the wrongdoer must personally cause the violation. *Leer*, 844 F.2d at 633.

REPORT AND RECOMMENDATION - 6

In his Amended Complaint, Mr. Pointec alleges that Defendants violated his Eighth Amendment rights by misdiagnosing his left thumb injury and denying him adequate medical care. ECF No. 23, at 5. To establish a constitutional violation under the Eighth Amendment due to inadequate medical care, a plaintiff must show "deliberate indifference" by prison officials to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). For an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Estelle, 429 U.S. at 106. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an 8th Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9.

In a case alleging an Eighth Amendment violation, "the appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'" *Hudson v. McMillian*, 503 U.S. 1, 5-6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992). Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that

REPORT AND RECOMMENDATION - 7

need. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  First, a "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35; *McGuckin*, 954 F.2d at 1059.  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059-60.

Mr. Pointec has failed to establish that a serious medical need existed for medical treatment in addition to what he was already provided.  His medical records indicate that he went to CRCC medical unit two weeks after the initial injury to his thumb.  Defendant Thamert immediately ordered an x-ray, which was taken the same day and sent to a Radiologist.  The x-ray confirmed the presence of a chip in Mr. Pointec's thumb.  Due to the amount of time that had passed since Mr. Pointec had sustained the injury coupled with the small size of the fracture, it was not clear whether he would benefit from a treatment of splinting and stabilization. Therefore, he was advised to rest his left thumb.  ECF No. 26-1, Exhibit 1, Attachment A.  When he was seen by Dr. Fetroe nearly two months later, Mr. Pointec received the same recommendation. ECF No. 26-2.  Mr. Pointec's small fracture eventually healed as evidenced by the x-rays taken four months later.  ECF No. 26-1, Attachment D.  Further, according to Dr. Suiter, Mr. Pointec's ongoing symptoms appear to be related to the ligamentous damage at the initial injury, which may be addressed with range of motion exercises but do not require any additional treatment. ECF No. 26-1, Exhibit 1, Suiter Decl., § 10.

REPORT AND RECOMMENDATION - 8

Based on the foregoing, Mr. Pointec fails to raise any issue of material fact with regard to the existence of a serious medical need. Mr. Pointec also fails to establish that any of the Defendants were deliberately indifferent to his medical needs.

In order to prevail on a claim of deliberate indifference, the plaintiff must prove that the prison official was (1) actually aware of facts from which an inference could be drawn that a substantial risk of harm exists; and (2) that the official actually drew the inference; but (3) nevertheless disregarded the risk to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). Differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Mr. Pointec's medical records show that every time he made a complaint about his left thumb injury, he was seen by his medical providers, was scheduled for follow up appointments, and was diagnostically tested. Mr. Pointec cancelled or failed to appear for some of those appointments. As noted above, the initial x-ray did not indicate that splinting was medically necessary, the conclusion was confirmed by two medical providers, and the x-ray taken four months post-injury revealed that Mr. Pointec's injury had healed. According to CRCC's Medical Director, no further treatment is required. ECF No. 26-1, Exhibit 1, Suiter Decl., Attachment D. Mr. Pointec provides no medical evidence to the contrary.

Although Mr. Pointec clearly disagrees that the use of splinting or casting was not medically necessary, he must show "more than a 'difference of medical opinion' as to the need to pursue one course of treatment over another … ." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1996). He must show that a course of treatment the doctors chose was medically unacceptable under the circumstances and that the treatment chosen was made with conscious

REPORT AND RECOMMENDATION - 9

disregard of an excessive risk to his health. *Id.* Mr. Pointec provides no evidence from which it can be inferred that the Defendants' treatment was medically unsound or that Defendants have been deliberately indifferent to his medical needs. The record reflects that Mr. Pointec's condition was acknowledged, addressed, and treated as clinically indicated.

Viewing the evidence in the light most favorable to Mr. Pointec, the undersigned concludes that Plaintiff has failed to raise an issue of material fact regarding Defendants' medical treatment. Accordingly, Defendants' motion for summary judgment on Mr. Pennick's Eighth Amendment claims should be granted.

**B.     Personal Participation – Defendant Geoghegan**

Alternatively, all claims against Defendant Geoghegan should be dismissed on the grounds that Mr. Pointec has failed to allege her personal participation in any constitutional violation.

In order to obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff must prove that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976). Sweeping conclusory allegations

REPORT AND RECOMMENDATION - 10

against an official are insufficient to state a claim for relief.  The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff.  *Aldabe*, 616 F.2d at 1092; *Rizzo*, 423 U.S. at 371.

Mr. Pointec alleges that Defendant Geoghegan misdiagnosed his thumb and offered him no treatment.  ECF No. 23, at p. 3.  These statements are conclusory and are not supported by any evidence.  In fact, there is no evidence that Defendant Geoghegan participated at all in any medical determination, diagnosis, treatment, or treatment recommendations relating to Mr. Pointec's medical treatment.  The evidence reflects only that she was the Imaging Technician who performed the August 11, 2011 x-ray, and that imaging technologists have no authority to prescribe medication, diagnose injuries, or offer medical advice or treatment options.  ECF No. 26-3, Exhibit 3, Geoghegan Decl., §§ 7, 8.

Based on the foregoing, the undersigned concludes that Mr. Pointec has failed to state a claim against Defendant Geoghegan and his claims against her should be dismissed.

**C.    Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity from suit.  Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful.  *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

REPORT AND RECOMMENDATION - 11

As the undersigned has determined that there has been no violation of Mr. Pointec's civil rights by Defendants, this issue need not be addressed.

**CONCLUSION**

For the reasons stated above, the undersigned recommends that Defendants' motion for summary judgment (ECF No. 26) be **GRANTED** and Plaintiff's claims against Defendants be **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **June 21, 2013,** as noted in the caption.

**DATED** this  4th  day of June, 2013.

Karen L. Strombom
United States Magistrate Judge